RENDERED: JULY 7, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0860-MR

ANTHONY GILKISON                                          APPELLANT

v.
APPEAL FROM PULASKI CIRCUIT COURT
HONORABLE TERESA WHITAKER, JUDGE
ACTION NO. 21-CI-00555

KENTUCKY UNEMPLOYMENT
INSURANCE COMMISSION AND
MENZNER LUMBER & SUPPLY                                   APPELLEES

OPINION
REVERSING
AND REMANDING

** ** ** ** **

BEFORE: CALDWELL, COMBS, AND KAREM, JUDGES.

COMBS, JUDGE: Anthony Gilkison brings this appeal from a June 27, 2022, order of the Pulaski Circuit Court dismissing his declaratory judgment action and his petition for relief from an order of the Kentucky Unemployment Insurance Commission. After our review, we reverse and remand for further proceedings.

Gilkison began working for Menzner Lumber & Supply (Menzner Lumber) on November 27, 2017. He last reported to work on June 17, 2020. Menzner Lumber assesses its employees one point for an absence from work and one-half point for an instance of tardiness or leaving early. Under the policy, the accumulation of ten points in a rolling twelve-month period constitutes grounds for termination. Gilkison was aware of the attendance policy.

Between August 21, 2019, and June 18, 2020, Gilkison was absent or left work early on twenty-one occasions. The employer issued Gilkison written warnings regarding his attendance on June 17, 2019; January 22, 2020; February 17, 2020; March 26, 2020; and April 22, 2020. Menzner Lumber issued a final attendance warning to Gilkison on June 2, 2020.

On Wednesday, June 17, 2020, Gilkison left work early because he feared being exposed to the coronavirus by coworkers who appeared to be ill. On Thursday, June 18, 2020, Gilkison called the company's "call-in line" to report that he would be absent due to illness. He left a message asking whether he still had a job. No one returned his call. Gilkison's next scheduled workday was Monday, June 22, 2020. However, he did not call in or report to work. In fact, Gilkison never again attempted to contact his employer regarding his status, and he never returned to the workplace.

Gilkison filed a claim for unemployment benefits. By decision rendered on March 17, 2021, a referee for Kentucky's Unemployment Insurance Commission (the Commission) found that benefits were not payable for the period of unemployment because Gilkison voluntarily quit suitable work without good cause attributable to the employment. By order dated May 10, 2021, the Commission affirmed the decision of its referee. The Commission was persuaded by the testimony of Menzner Lumber's human resources representative and concluded that Gilkison voluntarily quit his job by failing to report to work or to contact the employer after June 18, 2020. The Commission specifically rejected Gilkison's assertion that he had been discharged by his employer. However, in accordance with provisions of the Coronavirus Aid, Relief, and Economic Security (CARES) Act, 15 U.S.C.[1] § 9021, the Commission remanded the matter to the Office of Unemployment Insurance "to consider if the claimant is eligible for [federal benefits]."

On June 14, 2021, before a determination had been made as to whether he qualified for federally funded Pandemic Unemployment Assistance (PUA benefits), Gilkison filed his petition for relief from the Commission's decision in Pulaski Circuit Court. Gilkison argued that the Commission's determination could not be upheld because it was not supported by substantial

---

[1] United States Code.

evidence. He also asserted constitutional challenges to the Commission's administrative process.

By September 21, 2021, Gilkison was awarded PUA benefits at the same weekly rate that he would have received had he been deemed eligible under provisions of Kentucky's regular unemployment benefits program. Upon this basis, and without filing an answer, the Commission filed a motion for summary judgment. It argued that Gilkison had now been awarded benefits in the amount he sought and, consequently, that challenges to the Commission's administrative process were moot. Gilkison resisted the motion.

By order entered on June 27, 2022, the circuit court granted the Commission's motion for summary judgment. The circuit court concluded that a live controversy no longer existed because it "cannot provide [Gilkison] any further relief from the Commission's administrative decision than that which he has already received . . . ." In *dicta*, it opined that the Commission's order affirming the decision of its referee and remanding for consideration under the federally funded wage replacement scheme "was rightfully decided based upon the facts as set forth in the order, the recitation of the facts as set forth in [Gilkison's] verified petition, and the additional evidence submitted within the record on the appeal." The circuit court dismissed Gilkison's action. This appeal followed.

On appeal, Gilkison argues that he is entitled to statutory review of the Commission's decision. Despite whatever representation he made concerning his eligibility for PUA benefits, Gilkison concedes in his brief to this Court that he "likely does not meet" the statutory requirements for the assistance he received pursuant to the CARES Act. He contends that the award of PUA benefits "leaves him open to federal review, recapture [of funds awarded], and potential liability when it is determined he was not eligible for PUA because he was entitled to UI benefits [regular unemployment insurance benefits]." He concedes as well that if the Commission's decision is correct that he left his job without good cause, he could not properly be awarded PUA benefits.

The CARES Act was signed into law on March 27, 2020. The Act was designed to mitigate the negative economic effects of the COVID-19 pandemic by providing (1) financial assistance to unemployed workers who had exhausted their entitlement to regular unemployment compensation and (2) coverage to individuals who were not eligible for regular unemployment compensation -- such as self-employed workers; individuals with a limited work history; gig economy workers, clergy, and others. 15 U.S.C. §§ 9021(a)(3)(A)(i), (c)(2), 9023(b)(1)-(3), 9025(a)(4); U.S. Dep't of Labor, Unemployment Insurance Program Letter No. 16-20, Unempl. Ins. Rep. (CCH), 2020 WL 2146515 (April 5, 2020). The benefit scheme was funded by the federal government but

administered through each state's unemployment benefit agency. U.S. Dep't of Labor, Unemployment Insurance Program Letter No. 16-20, Unempl. Ins. Rep. (CCH), 2020 WL 2146515 (April 5, 2020). In its guidelines concerning proper implementation of the CARES Act, the Department of Labor emphasized to each state that "individuals are only entitled to benefits if they are no longer working through no fault of their own[.]" *Id.*

The states were provided additional funding to cover costs associated with implementing the program. *Id.* They were instructed that the states played a "fundamental role in ensuring the integrity of [the program]." *Id.* The Labor Department indicated that it would be "actively engaged with its Office of the Inspector General (OIG) to ensure program integrity." *Id.* Tens of millions of dollars were appropriated to the OIG "to carry out audits, investigations, and other oversight activities related to states' adherence to . . . provisions of the CARES Act." *Id.*

An individual eligible to collect PUA benefits is specifically defined by the Act. He is an individual who (1) "is not eligible for regular compensation or extended benefits under State or Federal law or pandemic emergency unemployment compensation" and who (2) self-certifies that he is "otherwise able to work and available for work within the meaning of applicable State law, except the individual is unemployed, partially unemployed, or unable or unavailable to

work because" of one of the enumerated reasons directly related to the COVID-19 pandemic. 15 U.S.C. § 9021(a)(3)(A).

In light of the truncated proceedings in the circuit court, the record before us does not include a record of the proceedings before the Commission nor the documents submitted by Gilkison to show his eligibility for the PUA benefits awarded to him. We do not know the basis upon which he was awarded PUA benefits. Nevertheless, as he has candidly admitted, if the Commission's finding is correct -- that is, he left his employment without good cause and is thereby ineligible to receive state unemployment insurance benefits -- he would also be ineligible to receive PUA under the CARES Act. An individual's general fear of exposure to COVID-19 at the workplace is not one of the qualifying conditions set forth in 15 U.S.C. § 9021(a)(3)(A)(aa) through (kk). After reviewing the limited record before us, we are unaware of any other evidence that would otherwise support a finding that a qualifying condition caused Gilkison to leave his employment. Under these unique and rather peculiar circumstances, we are persuaded that Gilkison is entitled to judicial review of the Commission's decision as provided by statute.

Judicial review of the Commission's decision to deny unemployment benefits is to be conducted in a summary manner. Review is governed by the general rule applicable to administrative actions. Where the findings of fact are

supported by substantial evidence of probative value, they must be accepted as binding, and it must then be determined whether the administrative agency has applied the correct rule of law to the facts. *Kentucky Unemployment Ins. Comm'n v. Cecil*, 381 S.W.3d 238 (Ky. 2012). It is the exclusive responsibility of the Commission to judge "the credibility of the witnesses, the weight given [to] the evidence, or the inferences to be drawn from the evidence." *Thompson v. Kentucky Unemployment Ins. Comm'n*, 85 S.W.3d 621, 624 (Ky. App. 2002) (footnote omitted). If upon proper review the circuit court concludes that the rule of law was applied correctly to facts based upon substantial evidence, the decision of the Commission must be affirmed.

Therefore, we are compelled to reverse the judgment of the Pulaski Circuit Court and to remand for further proceedings.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Robyn Smith
Adam Johnson
Preston J. Spicer
Louisville, Kentucky

BRIEF FOR APPELLEE:

Matthew P. Lynch
Frankfort, Kentucky